IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

JACOB SANFORD,

       Plaintiff,     Case No. 3:07 CV 3588

 -vs-

                <u>MEMORANDUM OPINION</u>

COUNTY OF LUCAS, STATE OF OHIO
et al.,

       Defendant.

KATZ, J.

   This case is before the Court on Defendants County of Lucas, Sheriff James Telb, Lucas County Sheriff's Department, Lucas County Juvenile Detention Center, Nancy Squires, and Brian Taber's motion for partial judgment on the pleadings. (Doc. 35). Plaintiff Jacob Sanford ("Sanford") has filed an opposition to Defendants' motion. (Doc. 39). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

**I. Background**

   **A. Procedure**

   On January 27, 2009, Sanford filed a second amended complaint against the following Defendants: (1) the County of Lucas, Ohio; (2) the Lucas County Sheriff's Department; (3) James Telb, individually and in his official capacity as Lucas County Sheriff; (4) Troy Jackson, individually and in his official capacity as Deputy of the Lucas County Sheriff's Department; (5) Mark Odoms, individually and in his official capacity as Deputy of the Lucas County Sheriff's Department; (6) Brian Taber, individually and in his official capacity as employee of the Lucas

County Sheriff's Department; (7) the Lucas County Juvenile Detention Center; and (8) Nancy Squires, individually and in her official capacity as employee of the Lucas County Juvenile Detention Center. (*See* Doc. 50).

Plaintiff alleges the following causes of action: (1) unlawful excessive use of force and deliberate indifferent training under 42 U.S.C. § 1983; (2) conspiracy to deprive Plaintiff of his constitutional rights under 42 U.S.C § 1985; (3) unlawful deprivation of Plaintiff's rights under the Ohio Constitution; (4) assault and battery under Ohio State laws. Defendants filed this motion before Plaintiff filed the second amended complaint. However, because Defendants' pending motion is just as relevant to the second amended complaint as the first,[1] the Court analyzes Defendant's motion against the second amended complaint.

Although the complaint names Deputies Jackson and Odoms, Defendants' motion for partial judgment on the pleadings is "partial" in that it does not address claims against deputies Jackson and Odoms. (Doc. 35 at 4 fn. 1).

**B. Facts**

On January 20, 2005, Sanford alleges that he was taken into a holding cell at the Lucas County Juvenile Detention Center and, in the presence of Deputy Odoms, Deputy Jackson repeatedly punched Sanford in the head and face. (Doc. 50 at ¶¶ 15-16). While Sanford was being repeatedly punched in the head and face by Deputy Jackson, Lucas County Sheriff Office employee Brian Taber and Juvenile Detention employee Nancy Squires either intentionally failed

---

[1] The second amended complaint corrected the address and employment information of Brian Taber. The first amended complaint stated that Taber was employed by the Juvenile Detention Center. (Doc. 20 at ¶ 6). However, Taber "was and is an employee, agent and/or servant of the Lucas County Sheriff's Office []." (Doc. 50 at ¶ 6).

to activate, or knowingly deactivated, the electronic monitoring system in the holding cell area in order to conceal the use of excessive force. (*Id.* at ¶¶ 17-18, 24). The complaint further states that Jackson, Odoms, Taber, and Squires made false statements and/or filed false reports about the incidents in an effort to conceal the use of excessive force and to deprive Sanford of his civil rights. (*Id.* at ¶¶ 20-21, 24). Sanford alleges that the actions of Jackson, Odoms, Taber, and Squires constituted a conspiracy to deprive Plaintiff of his civil rights. (*Id.* at ¶¶ 23-25).

Sanford believes that Lucas County Sheriff James Telb, in his individual and official capacity, knowingly and intentionally acted in concert with the other defendants, and for the purpose of concealing the use of excessive force against Sanford, failed to conduct or ensure a proper investigation of the incident. (*Id.* at ¶¶ 26).

Sanford alleges that all Defendants have a custom and policy of failing to protect pretrial detainees from the use of excessive force, (*Id.* at ¶ 27), and that Defendants have failed to establish and implement policy and procedure to prevent the use of excessive force or to ensure the safety and security of pretrial detainees, including minors, in their custody and control. (*Id.*) Furthermore, Defendants failed to properly hire, supervise, or train employees regarding the use of force. (*Id.*) As a direct and proximate result of Defendants allegedly unlawful conduct, Sanford has suffered physical injuries, pain, suffering, fear, humiliation, embarrassment, and severe emotional distress. (*Id.* at ¶ 28).

## II. Standard of Review

After the pleadings are closed, Fed.R.Civ.P. 12(c) permits any party to move for judgment on the pleadings as long as trial is not delayed as a result. A 12(c) motion employs essentially the same standard as a 12(b)(6) motion. *United Food & Commer. Workers Local 1099 v. City of*

*Sidney*, 364 F.3d 738, 746 (6th Cir. 2004)*; Spivey v. Ohio*, 999 F.Supp. 987, 991 (N.D.Ohio 1998). Specifically, "a district court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) (quoting *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001)). However, it is unnecessary for the Court to "accept as true legal conclusions or unwarranted factual inferences." *Kottmyer*, 436 F.3d at 688.

### III. Discussion

In their motion for partial judgment on the pleadings, Defendants argue: (1) a County is not regarded as a body corporate and cannot sue or be sued; (2) the federal causes of action asserted against the Lucas County Juvenile Detention Center are barred by the Eleventh Amendment to the United States Constitution; (3) the federal causes of action asserted against Brian Taber and Nancy Squires, in their official capacities, are barred by the Eleventh Amendment to the United States Constitution; (4) the amended complaint failes to state a §1983 claim against the Lucas County Sheriff's Department, the Lucas County Juvenile Detention Center, and James Telb, Brian Taber, and Nancy Squires, in their official capacities; (5) the amended complaint failes to state a §1983 claim against Sheriff James Telb, in his individual capacity; (6) the amended complaint failes to state a claim under 42 U.S.C. §1985; (7) the state law claims asserted against the Lucas County Sheriff's Department, the Lucas County Juvenile Detention Center, and James Telb, Brian Taber, and Nancy Squires, in their official capacities are barred by Ohio Rev. Code Ann. §2744.02; (8) the state law claims asserted against Sheriff James Telb in his individual

capacity are barred by Ohio Rev. Code Ann. §2744.023; and (9) the Ohio Constitution does not create a private cause of monetary damages.

### A. Claims under 42 U.S.C. § 1983

"To sustain a § 1983 claim, [a] plaintiff must establish that [he/she] was deprived of a right secured by the Constitution or laws of the United States, and that this deprivation was caused by a person acting under the color of state law." *Memphis, Tenn. Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)).

#### 1. Lucas County

Defendants argue that a county is not regarded as a body corporate and cannot sue or be sued except where specifically authorized by statute. *See Stone v. Holzberger*, 807 F.Supp. 1325, 1333 (S.D.Ohio 1992) (citing Ohio Rev. Code § 301.22; *Pancake v. Wakefield*, 102 Ohio App. 5, 140 N.E.2d 887 (Athens Cty. 1956)); *see Picciuto v. Lucas County Board of Commissioners*, 69 Ohio App.3d 789, 769 (1990). Defendants argue that a county, such as Lucas County, becomes a "body politic and corporate" capable of suing and being sued only if the county has adopted a charter or an alternative form of government. *See* Ohio Rev. Code § 301.22.

However, the United States Supreme Court has concluded that "[t]he bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances . . . but does not extend to counties and similar municipal corporations." *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). The Sixth Circuit adopted this holding in *S.J. v. Hamilton County, Ohio*, when the court expressly affirmed the

"portion of the district Court's order denying immunity to defendant Hamilton County[, Ohio]." 374 F.3d 416, 420 (6th Cir. 2004).

Thus, the Court denies Defendants' motion for judgment on the pleadings with regard to claims asserted against County of Lucas.

### 2. Lucas County Juvenile Detention Center

Defendants argue that the federal causes of action asserted against the Lucas County Juvenile Detention Center are barred by the Eleventh Amendment to the United States Constitution. *See Oswald v. Lucas County Juvenile Detention Center*, 234 F.3d 1269 (6th Cir. 2000). Defendants direct the Court to Ohio Rev. Code § 2152.41[2] for the proposition that a county juvenile detention center is part of the juvenile court, which is an arm of the state. Furthermore, "state governments, and their arms, officers, and instrumentalities, are generally immune from private lawsuit in federal court by virtue of the Eleventh Amendment to the United States Constitution." *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997).

Plaintiff responds that the Eleventh Amendment is not a bar against the Juvenile Detention Center in this case due to the Sixth Circuit's doubt regarding the foundation of *Mumford*. *See Alkire v. Irving*, 330 F.3d 802, 811 (6th Cir. 2003) ("The Supreme Court has taken apart the foundation of our decision in *Mumford* since it was decided"). The Sixth Circuit addressed this issue in *S.J.* Since Eleventh Amendment immunity "does not extend to counties and similar municipal corporations", the determination of whether or not an agency is an arm of the state depends on a number of factors. *S.J.*, 374 F.3d at 419 (6th Cir. 2003) (citing *Regents of Univ. of*

---

[2] Defendants cited to Ohio Rev. Code § 2151.34, a statute that was amended and recodified as § 2152.41.

*California v. Doe*, 519 US 425 at 430 (1997)). In deciding whether an entity is an arm of the state, the Sixth Circuit has adopted a four-part test asking: (1) whether the state is responsible for paying the judgment; (2) what the status of the entity is under state law; (3) what degree of control the state maintains over the entity; and (4) the source of the entity's funding. *S.J.*, 374 F.3d at 422. In *S.J.*, the Sixth Circuit determined that Hillcrest Training Center, a facility in which juvenile offenders were placed by order of the Hamilton County Juvenile Court, was not an arm of the state. *Id.* at 423. The Court emphasized that it placed significant weight on the fact that Hamilton County rather than the state would be responsible for any judgment against it. *Id.* At this stage, further discovery is required in order to acquire the facts necessary to determine whether the Juvenile Detention Center is an arm of the state. As a result, the Court denies Defendants' motion for judgment on the pleadings with regard to the Lucas County Juvenile Detention Center.

Furthermore, Defendants argues that the federal causes of action asserted against Nancy Squires, in her official capacity, are barred by the Eleventh Amendment. A suit against a defendant in his or her official capacity represents a suit against the entity of which he or she is an agent. *Brotherton v. Cleveland*, 173 F.3d 552, 565 (6th Cir. 1999). As a result of the Court's conclusion with regard to the Juvenile Detention Center, the Court denies Defendants' motion for judgment on the pleadings with regard to Squires in her official capacity.

### 3. Governmental entities

Defendants argue that the complaint fails to state a §1983 claim against the Lucas County Sheriff's Department, the Lucas County Juvenile Detention Center, and James Telb, Brian Taber, and Nancy Squires, in their official capacities.

7

A governmental entity may not be held liable under 42 U.S.C. § 1983 simply on the basis of respondeat superior. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Rather, the plaintiff must show that an action under an official policy or custom of the government entity caused the alleged loss. *Id.; Jett v. Dallas Independent School District*, 491 U.S. 701 (1989). Plaintiff must "show[] that the unconstitutional policy or custom existed, that the policy or custom was connected to the county, and that the policy or custom caused his constitutional violation." *Napier v. Madison County, Ky.*, 238 F.3d 739, 743 (6th Cir. 2001).

"A 'policy' is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Shorts v. Bartholomew*, 255 Fed.Appx. 46, 57 (6th Cir. 2007) (quoting *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002); *see also Brown v. Shaner*, 172 F.3d 927, 930 (6th Cir. 1999). A single decision by a municipality's policy-maker can constitute a "policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). A "custom" is so permanent, widespread, or well-settled that it has the "force of law" and need not be formally approved. *Doe v. Claiborne County*, 103 F.3d 495, 507-08 (6th Cir. 1996).

Defendants argue that Sanford fails to allege that his loss was caused by an official policy or custom of one of the government entities. Furthermore, the complaint admits that the existing policy of Lucas County Sheriff's Department required that the visual monitoring and recording system be activated.

Plaintiff relies on *Moreno v. Metropolitan General Hospital*, 2000 WL 353537, at *3 (6th Cir. Mar. 28, 2000). In *Moreno*, the Sixth Circuit considered whether the plaintiff alleged sufficient facts to state a claim that the municipal defendant failed to train its employees in the

8

proper use of excessive force. *Id.* at *2. The Sixth Circuit concluded that Plaintiff's complaint was sufficiently pled under the notice pleading standard when the complaint set forth sufficient facts connecting the victim's injury with the municipal policy or custom. *Id.* at **2-3. The plaintiff in *Moreno* also alleged the defendant's failure to train constituted deliberate indifference to the rights of the victim in question. *Id.* at *3; *see also Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 489 (1989) (concluding that failure to train claims must reflect a deliberate or conscious choice by a municipality that results in a failure to provide adequate training in light of foreseeable consequences or failure to act in response to repeated complaints). To require more would defeat the purpose of the notice pleading standard and would result in the application of a higher pleading standard for § 1983 complaints.

Here, Plaintiff has pled that he was subjected to the use of excessive force by sheriff's deputies while incarcerated at the Juvenile Detention Center (Doc. 50 at ¶ 15-16); that Defendants concealed the use of excessive force by disabling video monitoring equipment while the beating was in progress (*Id.* at ¶¶ 17-18, 24); that the subsequent investigation of this incident was inadequate and calculated to conceal the use of force (*Id.* at ¶ 26); and that these violations were the result of a custom and policy of deliberate indifference to the use of excessive force by the sheriff's deputies (*Id.* at ¶ 27). Sanford has also alleged that Defendants' failure to train constituted deliberate indifference. (*Id.*) Essentially, liability against the government entities is premised upon allegations that by failing to train and supervise deputies, the entities encouraged the practice of excessive force which led to Plaintiff's injury. As a result, the Court finds that the complaint sets forth sufficient facts connecting the victim's injury with a municipal policy or

9

custom. Also, Plaintiff has alleged sufficient facts for a failure to train claim that reflects a deliberate or conscious choice by the government entities to provide inadequate training in light of foreseeable consequences that could result from a lack of instruction. *See Brown*, 172 F.3d at 931. Accordingly, the Court denies Defendants' motion for judgment on the pleadings with regard to Defendant Lucas County Sheriff's Department and Lucas County Juvenile Detention Center. Furthermore, because an official capacity claim against an official is tantamount to a claim against a governmental entity, *Kentucky*, 473 U.S. 159, 166 (1985), the Court denies Defendants Telb, Squires, and Taber's motion for judgment on the pleadings for all claims asserted against them in their official capacities.

### 4. Qualified Immunity: Sheriff Telb

Defendants argue that the complaint fails to state a §1983 claim against Sheriff James Telb in his individual capacity. The qualified immunity doctrine provides that "government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Walsh v. Cuyahoga Cty.*, 424 F.3d 510, 513 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

For a motion to dismiss (and a motion for judgment on the pleadings), the Court must first consider whether the facts alleged show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the officer in question violated the claimant's constitutional rights, the Court asks whether, at the time of the alleged violation, that right was "clearly established." *Id.*; *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007)*; Williams v. Alabama State University*, 102 F.3d 1179, 1182 (11th Cir. 1997)

### i. Constitutional violation

Plaintiff alleges that Defendants, including Sheriff Telb, failed to train employees in the proper use of force. (Doc. 50 at ¶ 27). To establish a failure to train claim, a complaint must set forth sufficient facts connecting the victim's injury with a municipal policy, custom or practice and it must allege that the defendants' "failure to train amount[ed] to deliberate indifference to the rights of [Plaintiff]." *Moreno*, 2000 WL 353537 at *2 (6th Cir. Mar. 28, 2000) (citing *City of Canton*, 489 U.S. at 388. Sanford's claims that Telb "failed to carry out a reasonable or adequate investigation," and "engaged in a custom and policy of . . . deliberate indifference . . . [by] knowingly fail[ing] to hire, train, or supervise staff in connection with the use of force, . . . and implement policy and procedure calculated to prevent the use of excessive force. (Doc. 50 at ¶ 26). Sanford alleges that Telb's failure to create and implement such policies resulted in the deputy officers' unconstitutional beating of Sanford, in addition to the covering up the of incident by falsifying statements and deliberately conducting an improper investigation. Such allegations are sufficient for a failure to train claim. *See Moreno,* 2000 WL 353537 at *2.

With regard to excessive force, "all claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A reviewing court "should pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (quoting *Graham*, 490 U.S. at 396).

11

Plaintiff alleges that he was taken into a holding cell and repeatedly punched in the head and face. This is sufficient to support an alleged violation of Sanford's Fourth Amendment rights. *See Phelps v. Coy,* 286 F.3d 295, 302 (6th Cir. 2002) (holding that a police officer's tackling of a handcuffed suspect, hitting him in the face twice, and banging his head on the floor three times, was unconstitutional); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (holding that a blow from a nightstick to a handcuffed, unresisting suspect was constitutionally unreasonable).

### ii. Clearly established

The Supreme Court has stated that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

With regard to the failure to train claim, Plaintiff has alleged that the failure to train the proper use of force constituted deliberate indifference and resulted in a violation of constitutional rights. For the purposes of this motion for judgment on the pleadings, this is sufficient to set forth a claim that the right was "clearly established." *See City of Canton*, 489 U.S. at 390. Furthermore, with regard to excessive force, Plaintiff alleges that he was taken into a holding cell and repeatedly punched in the head and face. It has long been held in the Sixth Circuit that the right to be free from the use of excessive force under the Fourth Amendment is "clearly established." *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994). Additionally, "a totally gratuitous blow" to a suspect offering no resistance violates the Fourth Amendment. *McDowell*, 863 F.2d at 1307. Applying these precedents to the facts alleged in the complaint, this Court concludes that Sanford's allegations are sufficient to support a claim that Telb violated clearly established constitutional rights.

As a result, the Court denies Defendants' motion for judgment on the pleadings for all claims asserted against Sheriff Telb his individual capacity.

**B. Claims under 42 U.S.C. § 1985**

In order to state a cause of action under § 1985, the plaintiff must allege that the defendants (1) conspired together, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or privilege of a citizen of the United States, and (5) and that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus. *Griffin v. Breckenridge*, 403 U.S, 88, 102, 91 S.Ct. 1790, 198 (1971).

Defendants argue that the complaint does not allege that the conspiratorial conduct of the defendants was motivated by racial, or other class-based, invidiously, discriminatory animus. However, paragraph twenty-five of Plaintiff's Amended Complaint states:

> The actions of Defendants Taber, Squires, Odoms and Jackson constitute a knowing, willful and intentional conspiracy, either express or implied, to deprive the Plaintiff, a pretrial detainee, of rights guaranteed under the Constitution and laws of the United States and the State of Ohio, including the equal protection of the law. Further, the actions of these defendants evidenced deliberate indifference and **invidiously discriminatory animus** to the use of excessive force against the Plaintiff.

(Doc. 50 at ¶ 25 (emphasis added)). Therefore, as Plaintiff has properly pled a §1985 claim, the Court denies Defendants' motion for judgment on the pleadings with regard to Sanford's claims under §1985.

**C. State law claims**

13

Sanford claims that Defendants' actions and inactions, including the beating of Plaintiff and the failure to appropriately investigate the incident, constitute Ohio state law claims for assault, battery, and a violation of the Ohio constitution. (Doc. 50 at ¶¶ 33-36).

### 1. Monetary Damages under the Ohio Constitution

Defendants argue that the Ohio Constitution does not create a private cause of action for monetary damage. (Doc. 50 at ¶¶ 33-34).

In determining whether Ohio law provides such a cause of action, this Court is bound by the determinations of Ohio courts. 28 U.S.C. § 1652; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). In Ohio, "unlike the federal system where 42 U.S.C. § 1983 creates a private cause of action to remedy violations of the United States Constitution, there exists no statute analogous to Section 1983." *PDU, Inc. v. City of Cleveland, et al.*, 2003 WL 21555157 Cuyahoga App. No. 81944, 2003 Ohio 3671, appeal denied, 100 Ohio St.3d 1485, 2003 Ohio 5992, 798 N.E.2d 1093; *see also Kenneth Melendez v. Sinclair Community College*, Case No. 3:05-CV-338 (S.D. Ohio Jan. 6, 2007), unreported, 2007 U.S. Dist. LEXIS 1409 *23; *Todd Wesaw, et al. v. City of Lancaster, et al.*, No. 2:2005cv0320 (S.D. Ohio Dec. 15, 2005), unreported, 2005 U.S. Dist. LEXIS 36691 *11-12.

As a result, the Court grants Defendants' motion for judgment on the pleadings on this issue and Plaintiff's cause of action for any monetary damages based on an alleged violation of the Ohio constitution is dismissed.

### 2. Immunity

Despite Plaintiff's allegations, Defendants contend that they are immunized from suit on any of the above claims by Ohio's Political Subdivision Tort Liability Act. *See* Ohio Rev. Code §

14

2744.01. Section 2744 shields political subdivisions with broad immunity from civil liability. Ohio Rev.Code § 2744.02(A). A political subdivision is "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state . . . ." Ohio Rev. Code § 2744.01(F); accord 2743.01(B).

The Court notes that Ohio case law is not settled as to whether the Sheriff's Office, or Sheriff Telb himself, should be considered a political subdivision. *See Brothers v. County of Summit*, 2007 U.S. Dist. LEXIS 38468, at *24 n.2, *73 (N.D. Ohio May 25, 2007) (noting that "Ohio's Tenth Appellate District has recognized the 'sheriff's department' as an extension of the 'county,'" while "Ohio's Twelfth District has accorded the 'Sheriff's Office' recognition as 'a body corporate and politic.'").

Notwithstanding this confusion, federal courts in this District have held that "the sheriff [is] an employee of the political subdivision, i.e. the county." *Id.* (citing Ohio Rev. Code § 2744.01(B) ("'Employee' includes any elected or appointed official of a political subdivision."); *Waggoner v. Carsey*, 129 Ohio App. 3d 79, 83 (Ohio Ct. App. 6th Dist. 1998); *Simpson v. White*, 1997 Ohio App. LEXIS 613, (Ohio Ct. App. 12th Dist. Feb. 24, 1997); *Young v. Summit City*, 67 Ohio App. 3d 661, 663-64 (Ohio Ct. App. 9 Dist. 1990)). Moreover, sheriff's deputies are also employees of the county political subdivision. *Linley v. DeMoss*, 83 Ohio App. 3d 594, 599 (Ohio Ct. App. 10 Dist. 1992). Immunity is provided for employees of political subdivisions under Ohio Rev. Code §2744.03(A)(6).

### i. Individual Capacity Immunity: Sheriff Telb

Defendants argue that the state law claims asserted against Sheriff Telb in his individual capacity are barred. Individual capacity immunity is properly analyzed under Ohio Rev. Code § 2744.03(A)(6). *See Cotton v. McFaul*, 1993 Ohio App. LEXIS 1956, at *2 (Ohio Ct. App. 8th Dist. 1993) (holding that "Sheriff immunity is based on employee status"); *but see also Saunders v. McFaul*, 71 Ohio App. 3d 46 (Ohio Ct. App. 8th Dist. 1990) (holding sheriff was not included in definition of "political subdivision," but not considering whether sheriff was an employee).

Section 2744.03 enumerates the tort liability of political subdivision employees, *see Chesher v. Neyer*, 477 F.3d 784, 796 (6th Cir. 2007); *Cotton v. McFaul*, 1993 Ohio App. LEXIS 1956, at *2 (Ohio Ct. App. 8th Dist. 1993), and provides that employees are "immune from liability for acts or omissions made in connection with a governmental or proprietary function unless the acts and omissions were [(a)] manifestly outside the scope of employment or official responsibilities; [(b)] made with malicious purpose, in bad faith, or in a wanton reckless manner; or [(c)] a section of the Revised Code expressly imposes liability." *Cotton*, 1993 Ohio App. LEXIS 1956, at *2 (citing Ohio Rev. Code § 2744.03(A)(6)). Thus, if the Sheriff Telb engaged in a governmental or proprietary function, and his conduct does not fall within one of the three exceptions listed above, he is immune in his individual capacity.

With regard to wanton or reckless misconduct, "wanton misconduct is the failure to exercise any care whatsoever." *Fabrey v. McDonald Vill. Police Dep't*, 70 Ohio St. 3d 351, 356 (Ohio 1994). Moreover, "[t]he standard for showing wanton misconduct is . . . high," *id*., and "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." *Roszman v. Sammett*, 26 Ohio St. 2d 94, 96-97 (Ohio 1977). "Such perversity must be under such conditions that the actor must be

conscious that his conduct will in all probability result in injury." *Fabrey*, 70 Ohio St. 3d at 356; *see also Vasquez v. Vill. of Windham*, 2006 Ohio App. LEXIS 6298, at \*\*19-21 (Ohio Ct. App.11th Dist. 2006).

Here, taking the facts set out in the complaint as true, Plaintiff claims that Telb "failed to carry out a reasonable or adequate investigation," and "engaged in a custom and policy of . . . deliberate indifference . . . [by] knowingly fail[ing] to hire, train, or supervise staff in connection with the use of force . . . and implement policy and procedure calculated to prevent the use of excessive force." (Doc. 50 at ¶ 26). Sanford alleges that Telb's failure to create and implement such policies resulted in the deputy officers' unconstitutional beating of Sanford, in addition to the covering up the of incident by falsifying statements and deliberately conducting an improper investigation. Such facts sufficiently allege that Sheriff Telb was "conscious that his conduct [would] in all probability result in injury," *Fabrey*, 70 Ohio St. 3d 351, 356, or that he exhibited an "intentional deviation from a clear duty . . . ." *Vasquez*, 2006 Ohio App. LEXIS 6298, at \*\*20 (citing *Hancock v. Ashenhurst*, 2004 Ohio App. LEXIS 2948, at \*\*10 (Ohio Ct. App. 10th Dist. 2004). Thus, the Court denies Defendants' motion for judgment on the pleadings with regard to state law claims against Sheriff Telb in his individual capacity.

### ii. Official Capacity Immunity

"Ohio's immunity statute draws no distinction between suits against an individual government employee in his official as opposed to his personal capacity. The Ohio Court of Appeals has held that an action against an officer in his 'official capacity' is simply another way of pleading an action against the governmental entity itself." *Chesher*, 477 at 797 (citing *Norwell v. City of Cincinnati*, 133 Ohio App. 3d 790, 803 (Ohio Ct. App. 1st Dist. 1999). Therefore, in order

17

to determine whether Defendants are immune in their official capacities, it must be determined whether the governmental entity - in this case, the political subdivisions of the Lucas County Sheriff's Department and Lucas County Juvenile Detention Center are immune from suit. *See id.* at 797 (noting that "[i]f official-capacity claims are nothing more than claims against the county, then it would be appropriate to dismiss the official capacity claims against the employee defendants if such claims have been dismissed against the county").

"The Political Subdivision Tort Liability Act . . . sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability." *Carter v. City of Cleveland*, 83 Ohio St. 3d 24, 28 (Ohio 1998). "First, [2744.02(A)(1)] sets forth the general rule of immunity, that political subdivisions [engaged in governmental or proprietary functions] are not liable in damages for the personal injuries or death of a person." *Id.*[3] "[O]nce immunity is established . . . the second tier of analysis is whether any of the five exceptions to immunity in [2744.02(B)] apply." *Id.*[4] Finally, even if an exception applies, "immunity can be reinstated if the

---

[3] Ohio Rev. Code § 2744(A)(1) states: For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

[4] The broad immunity is subject to exceptions listed at § 2744.02(B)(1)-(5) of the Ohio Rev.Code: (1) Injuries caused by the negligent operation of a motor vehicle; (2) Injuries caused by the negligent performance of proprietary functions; (3) Injuries caused by the failure to keep open roads, highways and streets open, in repair and free from nuisance;(4) Injuries caused by negligence on the grounds of a building used for governmental purposes; or (5) Injuries for which liability expressly is imposed by the Ohio Revised Code.

political subdivision can successfully argue that one of the defenses contained in [Ohio Rev. Code § 2744.03] applies." *Id.*

In the case at bar, first, Defendants were engaged in a governmental function. *State v. Cook*, 83 Ohio St.3d 404, 700 N.E.2d 570 (1998) (Police power is considered a government function). Second, with the exception of Sheriff Telb, Plaintiff has not argued that any of the exceptions under R.C.2744.02(B) apply against any other Defendant. However, with regard to Defendant Telb, Plaintiff argues that R.C.2744.02(B)(5) applies because civil liability may be "imposed upon the political subdivision by a section of the [Ohio] Revised Code." Plaintiff claims that Defendant Telb is liable based on Ohio Rev. Code § 311.05, which states that "[t]he sheriff shall only be responsible for the neglect of duty or misconduct in office of any of his deputies if he orders, has prior knowledge of, participates in, acts in reckless disregard of, or ratifies the neglect of duty or misconduct in office of the deputy." Plaintiff has alleged sufficient facts that Sheriff Telb acted consistently with § 311.05. Finally, Defendants have not responded to whether one of the defenses contained in Ohio Rev. Code § 2744.03 applies. As a result, while the Court grants Defendants' motion for judgment on the pleadings with regard to the official capacity claims under Ohio law stated against Defendant Squires and Taber, the Court denies such claims with regard to Defendant Telb.

**IV. Conclusion**

The Court denies Defendants' motion for judgment on the pleadings with regard to: (1) federal claims asserted against County of Lucas, Lucas County Sheriff's Department, and Lucas County Juvenile Detention Center; (2) federal claims asserted against Squires, Telb, and Taber in their official capacities; (3) federal claims asserted against Sheriff Telb his individual capacity; (4)

19

Sanford's claims under §1985; and (5) state law claims against Sheriff Telb in his individual and official capacity. The Court grants Defendants' motion for judgment on the pleadings with regard to: (1) any claim for monetary damages based on an alleged violation of the Ohio Constitution; and (2) state claims asserted against Defendants Lucas Count Juvenile Detention Center, and Squires and Taber in their official capacities.

    IT IS SO ORDERED.

                                                                             s/ *David A. Katz*
                                                                             DAVID A. KATZ
                                                                             U. S. DISTRICT JUDGE